

CLERK'S OFFICE
A TRUE COPY
Jul 06, 2021
s/ Daryl Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) Case No.   21   MJ   124 |
| Information about the location of the cellular devices assigned call numbers (262) 664-3328 and (262) 497-2716 ("Target Cell Phones") whose service provider is AT&T Wireless | ) **Matter No.: 2021R00144** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711 and 18 U.S.C. § 2711(3)(A)(i).

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 841, 846 and 856 | Distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances and maintaining a drug-involved premises. |

The application is based on these facts:

See the attached affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*   7/2/2021

TFO Mark A. Haleen
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

telephone _____ *(specify reliable electronic means).*

Date:   July 6, 2021

*Judge's signature*

City and state:   Milwaukee, WI

Hon. William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**

**AN APPLICATION FOR A SEARCH WARRANT**

**MATTER NO. 2021R00144**

I, Mark A Haleen, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     Affiant makes this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephones assigned call numbers 262-664-3328 and 262-497-2716 (the "Target Cell Phones"), whose service provider is AT&T Wireless ("Service Provider") a wireless telephone service provider headquartered at 11760 U.S. Highway 1, Suite 300, North Palm Beach, Florida 33408.  The Target Cell Phones are described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.     In this application, the United States seeks (1) historical cell-site location information; (2) historical precision location information; (3) prospective, real-time cell-site location information; (4) prospective, real-time precision location information (i.e., E-911 Phase II data and GPS); and, (5) subscriber information and other historic non-content records and information.

3.     Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing,

routing, addressing, and signaling information associated with each communication to or from the Target Cell Phones.

4.      Affiant is a Detective with the Village of Mount Pleasant Police Department and currently deputized as a Task Force Officer and assigned to the Milwaukee Area Safe Streets Federal Bureau of Investigation (FBI) Gang Task Force (MASSTF).  Prior to becoming a Police Detective, Affiant received a bachelor's degree from Central Michigan University in the field of Sociology.

5.      With Village of Mount Pleasant Police Department and the MASSTF Affiant has participated in numerous investigations into firearms trafficking, unlawful possession of firearms by prohibited persons, unlawful use of firearms, and drug trafficking. Affiant  knows from training and experience that those that commit crimes related to trafficking illegal controlled substances commonly communicate with co-conspirators by means of cellular devices including sending and receiving photographs, videos, phone calls, text messages, electronic mail, messaging applications, and social media.

6.      Affiant has participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. Affiant has also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested.  On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of Affiant's investigations, Affiant has regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

7.     The facts in this affidavit come from Affiant's personal observations, training and experience, review of documents, and information obtained from other federal, state, and local law enforcement officers and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of Affiant's knowledge about this matter.

8.     Based on Affiant's training and experience and the facts as set forth in this affidavit, there is probable cause to believe that possible crimes of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances and maintaining a drug-involved premises, violations of Title 21, United States Code, Sections 841, 846 and 856, have been committed by MARQUAN WASHINGTON, BRIAN PHILLIPS, SARAH BECKIUS, GERARDO LARA and additional known and unknown persons.  There is also probable cause to search the information described in Attachment A for evidence of these crimes and possible identification of individuals who engaged in the commission of these offenses further described in Attachment B.

## JURISDICTION

9.     The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

10.     The MASSTF have been investigating the conspiracy drug trafficking activities led by MARQUAN WASHINGTON, BRIAN PHILLIPS, SARAH BECKIUS, GERARDO LARA and additional known and unknown persons.  As part of the investigation, members of the FBI, the Racine Police Department, and the Village of Mount Pleasant Police Department have

conducted surveillance, utilized Confidential Human Source (CHS) during controlled drug buys and obtained and confirmed information through Sources of Information (SOI).

11.     Generally, during the below listed controlled purchases of controlled substances the CHS placed a recorded phone call to the target, captured audio and video of the controlled purchase, was followed to and from the controlled purchase location, was searched before and after the controlled purchase with no drugs, money, or weapons located, debriefed after the controlled purchase, and the above evidence and statements reviewed and verified by law enforcement. Additionally, the controlled substances were all weighed and tested positive for the listed substance using Nark II test kits following the printed instructions and the target was identified by the CHS through photographs. For the purposes of this affidavit, CHS refers to those persons actively cooperating by conducted controlled purchases of illegal drugs. SOI refers to those persons providing information to law enforcement. A SOI with the same number as a CHS are the same person and has provided information to law enforcement and actively cooperated by conducted controlled buys of illegal controlled substances at the direction and control of law enforcement.

12.     On 03/03/2021 Racine Police Department Detective Michael Seeger conducted a debrief of SOI #1. SOI #1 identified that Terry Brumby, Mario Johnson, MARQUAN WASHINGTON, Akeem First, Carl Grayson, and Plaze Anderson are working together in a drug trafficking organization to distribute large amounts of crack cocaine and marijuana within the City of Racine. SOI #1 stated that the group runs a drug dealing business out of Grayson's apartment on Kearney Ave. Affiant is aware through the course of this investigation and Police records that Grayson resides at 1848 Kearney Ave, Apt #2, Racine, WI.

13.     SOI #1's information is credible and reliable because SOI #1 has given information concerning individuals involved in illegal activities which has been independently verified through

this investigation. SOI #1 cooperated with law enforcement in exchange for consideration on a felony charge and received a total of $500 in compensation. SOI #1 has prior adult felony convictions for Manufacture/Delivery of Cocaine, Bail Jumping, and Possession of THC, and an adult misdemeanor conviction for Possession of THC. SOI #1 has a criminal traffic misdemeanor for Operating a vehicle without a license.

14.     On 03/04/2021 Racine Police Department TFO Daniel Langendorf conducted a debrief of SOI #2. SOI #2 identified a drug trafficking organization operating in the City of Racine consisting of but not limited to Terry Brumby, Mario Johnson, MAQUAN WASHINGTON, Tirwawann Barker, Akeem First, Plaze Anderson, and Zisirtike Mcmillian. SOI #2 had knowledge that the above individuals will pool their money together to buy larger quantities of cocaine for better prices. SOI #2 has personally observed several members to be in possession of a large amount of money and share rental vehicles.

15.     SOI #2's information is credible and reliable because SOI #2 has given information concerning individuals involved in illegal activities which has been independently verified through this investigation. SOI#2 cooperated with law enforcement in exchange for consideration on felony charges and received no monetary consideration. SOI #2 has adult felony convictions for 1st Degree Reckless Endangering Safety x2, Fleeing and Eluding x2, Manufacture/Deliver Cocaine x3, and Maintain Drug Trafficking Place.

16.     On 03/05/2021 TFO Langendorf and Detective Seeger conducted a debrief of SOI #3. SOI #3 identified Terry Brumby, Mario Johnson, MARQUAN WASHINGTON, Akeem First, Zisirtike Mcmillian, Michael Hardin, Plaze Anderson, and Mark Etinne are working together as a group to sell and distribute illegal drugs within the City of Racine. SOI #3 stated that the above individuals will use rental vehicles to sell crack cocaine. SOI #3 has personally witnessed MARQUAN WASHINGTON sell crack cocaine and possess a firearm. SOI #3 knows Michael

Hardin to sell crack cocaine, heroin, and marijuana for the group and personally observed Michael Hardin with a firearm in 2020. SOI #3 believes that Terry Brumby is the leader of the group and will sell about a kilogram of cocaine per month. SOI #3 believes that Terry Brumby supplies drugs to Mario Johnson and MARQUAN WASHINGTON.

17.     SOI #3's information is credible and reliable because SOI #3 has given information concerning individuals involved in illegal activities which has been independently verified through this investigation. SOI #3 cooperated with law enforcement in exchange for money and has been compensated $200. SOI #3 has adult felony convictions for Attempted Bribery of Witness, Failure to Report to County Jail, 2nd Degree Recklessly Endangering Safety, Substantial Battery, and misdemeanor convictions for Bail Jumping, Intentionally Pointing a Firearm at Person x2, Disorderly Conduct, Operating Vehicle after Revocation, and Criminal Trespass to Dwelling.

18.     On 03/12/2021 Racine Police Department TFO David Rybarik conducted a debrief of SOI #4 who was in custody on drug and gun charges. SOI #4 stated that BRIAN PHILLIPS and MARQUAN WASHINGTON were two large level drug dealers in the City of Racine. SOI #4 stated that both BRIAN PHILLIPS and MARQUAN WASHINGTON purchase cocaine from the same Hispanic Male identified only by nickname as "Migo". SOI #4 stated that BRIAN PHILLIPS recently paid "Migo" $61,000 as payment for controlled substances. SOI #4 knows that BRIAN PHILLIPS and MARQUAN WASHINGTON use the same source of supply for cocaine and that SOI #4 is a longtime friend of BRIAN PHILILPS. SOI #4 knows that MARQUAN WASHINGTON purchases approximately 1-1.5 kilograms of cocaine from "Migo" every month over the past year. SOI #4 also knew that "Migo" was the victim of a burglary where $160,000 was stolen. SOI #4 knew that MARQUAN WASHINGTON had orchestrated the burglary by luring "Migo" away from the residence to use a money counter. SOI #4 knows that

MARQUAN WASHINGTON will obtain cocaine from BRIAN PHILLIPS when "Migo" is unavailable.

19.    SOI #4 identified that MARQUAN WASHINGTON, Terry Brumby, Mario Johnson, and Akeem First all work together to sell crack cocaine and marijuana and all pool their money and resources to purchase and distribute larger loads of controlled substances for increased drug proceeds.  MARQUAN WASHINGTON, Terry Brumby, Mario Johnson, and Akeem First use 1848 Kearney Ave. Racine, WI as their "spot" to store, package, and distribute controlled substances.

20.    SOI #4's information is credible and reliable because SOI #4 has given information against SOI #4's penal interest and provided information concerning other individuals involved in illegal activities that have been corroborated by this investigation and other sources of information. SOI #4 is cooperating with law enforcement in exchange for consideration on felony charges. SOI #4 has adult felony convictions for Possession with Intent to Deliver Cocaine, Battery by Prisoners, Possession with Intent to Deliver Cocaine, Fleeing and Eluding an Officer, 2nd Degree Recklessly Endangering Safety, and misdemeanor convictions for Obstructing/Resisting an Officer x4, Possession of THC x2, Bail Jumping, Disorderly Conduct, and Criminal Damage to Property.

21.    On 03/17/2021 Detective Seeger conducted a debrief of SOI #5. SOI #5 identified that Terry Brumby, Mario Johnson, MARQUAN WASHINGTON, Mark Etinne, Akeem First, and Zisirtike Micmillian to be working as a group to sell large amounts of heroin, cocaine, and marijuana within the City of Racine.  SOI #5 stated that the above members pool their money together and purchase the drugs as a group.

22.    SOI #5's information is credible and reliable because SOI #5 has given information concerning other individuals involved in illegal activities that have been corroborated by this investigation and other sources of information.  SOI #5 has provided law enforcement information

in the past reliable including information on drug and weapon offenses and the location of wanted persons. SOI #5 is cooperating with law enforcement in exchange for monetary payment and has been compensated a total $100 for this case. SOI #5 has adult felony convictions for Prisoner Expel Bodily Substance, Bail Jumping, and misdemeanor convictions for Battery and Disorderly Conduct.

23. On 03/30/2021 TFO Rybarik conducted a debrief of SOI #6. SOI #6 identified Terry Brumby, Mario Johnson, MARQUAN WASHINGTON, Michael Hardin, and Carl Grayson are working together to sell large amounts of controlled substances in the City of Racine. SOI #6 also knows that MARQUAN WASHINGTON was involved in the theft of $160,000 from a "Mexican" that was the source of supply of cocaine for MARQUAN WASHINGTON. SOI #6 knew that this Hispanic male was previously the source of supply (cocaine) for Michael Wright prior to Michael Wright being incarcerated. SOI #6 stated that MARQUAN WASHINGTON was recently "robbed" of $30,000 and this caused everybody in the group to use more legitimate methods including bank accounts to store their money.

24. SOI #6's information is credible and reliable because SOI #6 has given information concerning other individuals involved in illegal activities that have been corroborated by this investigation and other sources of information. SOI #6 is cooperating in exchange for consideration on a potential felony charge and has received $300 in monetary payments. SOI #6 has no adult felony convictions and has misdemeanor convictions for Disorderly Conduct, Retail Theft, Attempted Retail Theft, Bail Jumping, Resisting/Obstructing an Officer, Bail Jumping, Operating Vehicle while Revoked, Resisting/Obstructing an Officer, and various criminal traffic charges.

25. On 3/31/2021 Racine Police Department Detectives Seeger and Andrew Matson conducted a debrief of SOI #7. SOI #7 identified "T-Nice (Terry Brumby), "MUNCH"

(MARQUAN WASHINGTON), "Roe Gotti" (Mario Johnson), "Mojo" (Michael Hardin), "Keem" (Akeem First), Plaze Anderson, and "E-Way" (Tirawann Barker) to be working together in a drug trafficking organization to sell large amounts of controlled substances within the City of Racine. SOI #7 identified 1848 Kearney Ave as the stash house which is run by a guy nicknamed "Pops", identified as Carl Grayson. SOI #7 knows that MARQUAN WASHINGTON has the cocaine connection and that the rest of the group will pool their money together and then Terry Brumby will go and pick up the controlled substances. SOI #7 knows Terry Brumby, MARQUAN WASHINGTON, Mario Johnson, Michael Hardin, Akeem First, Plaze Anderson, Tirawann Barker, and Zisirtike Mcmillian to be working as a criminal organization to sell controlled substances within the City of Racine to make large amounts of money. SOI #7 knows the group of individuals are working together, pooling their money together to purchase large quantities of cocaine and marijuana. SOI #7 knows that the group is actively selling illegal drugs within Racine. SOI #7 knows the group to often utilize rental vehicles to assist them in the sales of controlled substances. SOI #7 has personally observed controlled substances and firearms at 1848 Kearney Avenue and 1915 Jay Eye See Avenue, which are both in the City of Racine. Lastly, SOI #7 knows this group of individuals have been closely working together to sell controlled substances since at least 2015.

26.     SOI #7's information is credible and reliable because SOI #7 has given information concerning other individuals involved in illegal activities that have been corroborated by this investigation and other sources of information. SOI #7 is cooperating in exchange for consideration on a felony charge and has received $300 in monetary consideration. SOI #7 has completed controlled purchases of cocaine from members of the group further corroborated by video evidence. SOI #7 has adult felony convictions for Theft, Possession with Intent to Deliver Cocaine, Possession of Cocaine, Felon in Possession of a Firearm, and misdemeanor convictions

for Possess Dangerous Weapon by person under 18, Carrying a Concealed Weapon, Battery, Resisting/Obstructing an Officer, Battery, Resisting/Obstructing an Officer, Bail Jumping, and Disorderly Conduct.

27.     On 04/12/2021 and 05/26/2021 TFO Rybarik, TFO Langendorf, and Detective Seeger conducted a debrief of SOI #8. SOI #8 acknowledged being an active participant in a group of individuals, including MARQUAN WASHINGTON, Terry Brumby, Mario Johnson, Michael Hardin, Tirawann Barker, Zisirtike Micmillian, Carl Grayson, and Plaze Anderson, who distribute controlled substances in the City of Racine.  SOI #8 identified MARQUAN WASHINGTON as the cocaine leader of the group and that MARQUAN WASHINGTON is obtaining approximately 4 kilograms of cocaine a month from a Hispanic Male SOI #8 knows only as "Migo".  SOI #8 outlined how MARQUAN WASHINGTON will then distribute one kilogram of cocaine to Terry Brumby and Mario Johnson and keep two kilograms for himself.  SOI #8 knows the group utilizes 1848 Kearney Ave for hanging out and selling the drugs.  SOI #8 knows that Mario Johnson is actively selling large amounts of cocaine and marijuana in the City of Racine and has personally observed Mario Johnson in possession of over $100,000 in drug proceeds.  SOI #8 knows that Michael Hardin gets 4.5 ounces of cocaine per month from MARQUAN WASHINGTON, Terry Brumby, or Mario Johnson.

28.     SOI #8's information is credible and reliable because SOI #8 has given information concerning other individuals involved in illegal activities that have been corroborated by this investigation and other sources of information.  SOI #8 has also provided information against SOI#8's penal interest.  SOI #8 is cooperating in exchange for consideration on felony charges and has received no monetary consideration.  SOI #8 has adult felony convictions for Possession with Intent THC, Bail Jumping x2, and three misdemeanor convictions for Resisting/Obstructing an Officer.

29.     On 04/08/2021 CHS #6 was utilized to purchase 7.4 grams of marijuana containing Tetrahydrocannabinol from Michael Hardin.  Prior to purchasing the marijuana, CHS #6 contacted MARQUAN WASHINGTON at 262-497-2716.   MARQUAN WASHINGTON answered the phone and the CHS #6 asked to purchase marijuana.  MARQUAN WASHINGTON told CHS #6 that MARQUAN WASHINGTON did not have any marijuana and directed CHS #6 to contact Michael Hardin ("Mojo") because Michael Hardin has the marijuana.   MARQUAN WASHINGTON sent CHS #6 the phone number 262-676-4482 to contact Michael Hardin and purchase marijuana.  CHS #6 called Michael Hardin who answered and indicated that MARQUAN WASHINGTON had just contacted him and told him that CHS #6 would be calling.  A short time later CHS #6 was able to purchase 7.4 grams of marijuana from Michael Hardin for $80 in the City of Racine.  During the controlled purchase of marijuana Michael Hardin was operating a 2018 Chevrolet Malibu with Wisconsin Registration AFE1716 which lists to Raven Luten at 2200 Washington Ave Apt 212.

30.     On 04/09/2021 CHS #7 was utilized to purchase 14.3 grams (1/2 ounce) of cocaine from Michael Hardin for $825.  The controlled purchase occurred in CHS #7's vehicle behind 1312 Russet St in the City of Racine.  Affiant is aware from this investigation that Michael Hardin stays/frequents this address with his girlfriend.  CHS #7 was directed by Michael Hardin to bring Michael Hardin to two different areas in the City of Racine where CHS #7 reports Michael Hardin sold $50 bags of cocaine to different people.

31.     On 04/14/2021 CHS #6 was utilized to purchase 2.8 grams of crack cocaine from MARQUAN WASHINGTON.  The controlled purchase occurred at 928 Delamere Ave in the City of Racine, WI.  CHS #6 had contacted MARQUAN WASHINGTON at 262-497-2716 to arrange the purchase and MARQUAN WASHINGTON had directed CHS #6 to 928 Delamere. Once at the location CHS #6 purchased the above crack cocaine from MARQUAN WASHINGTON.

32.     On 04/21/2021 CHS #6 was utilized to purchase 1.5 grams of crack cocaine from Carl Grayson through MARQUAN WASHINGTON.    CHS #6 called MARQUAN WASHINGTON at 262-497-2716 and requested to purchase $150 worth of crack cocaine. MARQUAN WASHINGTON eventually answered the phone calls and explained that he was in Kenosha and that CHS #6 should go to "Pops" house and that "Pops" will bring the crack cocaine to the door.  From the investigation law enforcement was already aware that "Pops" is Carl Grayson and he resides at 1848 Kearney Ave in the City of Racine.  Additionally, it is known by law enforcement that Carl Grayson is working with MARQUAN WASHINGTON to distribute crack cocaine from 1848 Kearney Ave.  CHS #6 went to 1848 Kearney Ave and purchased 1.5 grams of crack cocaine from Carl Grayson for $150.

33.     On 04/23/2021 CHS #6 was utilized to purchase 2.8 grams of crack cocaine for $150. CHS #6 called MARQUAN WASHINGTON at 262-497-2716 and then meet with MARQUAN WASHINGTON in the 1900 block of Linden Ave, due to an unrelated police presence near his 928 Delamere Ave residence, and CHS #6 purchased the above crack cocaine from MARQUAN WASHINGTON.   Affiant confirmed that there was an unrelated police presence near 928 Delamere Ave which was related to RAPD 21-14935.

34.     On 04/26/2021 CHS #10 was utilized to purchase 1.0 gram of crack cocaine from Carl Grayson at 1848 Kearney Ave in the City of Racine for $100.  CHS #10 contacted Carl Grayson at 262-417-3060 prior to the meeting him and asked if Carl Grayson had controlled substances for sale through street slang.  CHS #10 went to 1848 Kearney Ave and purchased the 1.0 grams of crack cocaine from Carl Grayson.  While CHS #10 was inside of 1848 Kearney Ave a drug user showed up to purchase $40 worth of crack cocaine from Carl Grayson.  CHS #10 reports that Carl Grayson was upset that this "customer' did not call ahead of time so that Carl Grayson could have the crack bagged up and ready.

35.     On 04/27/2021 CHS #10 was utilized to purchase .9 grams of crack cocaine from Carl Grayson at 1848 Kearney Ave for $100.  CHS #10 had called Carl Grayson at 262-417-3060 prior to meeting him and confirmed Carl Grayson had crack for sale through street terms.  CHS #10 went to 1848 Kearney Ave and purchased the crack cocaine from Carl Grayson and reports that Carl Grayson had additional packaging materials and crack cocaine on a plate in the living room.

36.     CHS #10's information is credible and reliable because CHS #10 has given information concerning other individuals involved in illegal activities that have been corroborated by this investigation and other sources of information.  CHS #10 has conducted multiple controlled purchases of controlled substances captured on video/audio recordings further corroborating CHS #10's statements.  CHS #10 is cooperating with law enforcement in exchange for consideration for felony and misdemeanor charges and has been compensated $1660.00 to date for this investigation. CHS #10 has a felony conviction for Possession with Intent to Deliver Narcotics and no misdemeanor convictions.

37.     On 04/29/2021 CHS #7 was utilized to purchase 29 grams of cocaine from Michael Hardin for $1600.  CHS #7 contacted Michael Hardin at 262-676-4482 and through text message conversation in street terms CHS #7 request to purchase an ounce of cocaine for $1600.  CHS #7 went to Michael Hardin's residence at 1312 Russet Ave and Michael Hardin entered CHS #7's vehicle to complete the transaction.  During the transaction Michael Hardin told CHS #7 that Michael Hardin also had three pounds of marijuana for sale and discussed prices with CHS #7.  Also, Michael Hardin explained a situation where two customers who did not get along showed up to buy marijuana at the same time.   Michael Hardin explained that a fight nearly ensued in front of his residence and he was upset about it.

38.     On 04/30/2021 CHS #10 was utilized to purchase 1 gram of crack cocaine from Carl Grayson for $80 at 1848 Kearney Ave. CHS #10 had contacted Carl Grayson at 262-417-3060 prior to the purchase. CHS #10 drove to 1848 Kearney Ave and was met by Carl Grayson in the hallway outside of Carl Grayson's apartment. CHS #10 purchased the crack cocaine and Carl Grayson told CHS #10 "MUNCH" (MARQUAN WASHINGTON) was inside the apartment "cooking" referring to why the deal happened in the hallway. During the transaction law enforcement was already aware that MARQUAN WASHINGTON was at the residence through surveillance. CHS #10 confirmed this meant that MARQUAN WASHINGTON was cooking powder cocaine into crack cocaine inside of Carl Grayson's apartment. Additionally, CHS #10 asked Carl Grayson to purchase marijuana and Carl Grayson said he would contact his nephew to purchase the marijuana for CHS #10 because the nephew would not sell directly to CHS #10.

39.     On 05/03/2021 CHS #6 attempted a controlled purchase of crack cocaine by calling MARQUAN WASHINGTON at 262-497-2716. MARQUAN WASHINGTON directed CHS #6 to get the crack from Carl Grayson however MARQUAN WASHINGTON was unable to get in contact with Carl Grayson and believed he was sleeping. CHS #6 went to 1848 Kearney Ave, however, nobody answered the door.

40.     On 05/04/2021 CHS #10 attempted to purchase crack cocaine from Carl Grayson and contacted Carl Grayson at 262-417-3060. Carl Grayson answered and advised he was not in town. Detective Seeger observed Mario Johnson in his Cadillac Escalade parked in front of 1848 Kearney Ave at the same time. Detective Seeger further witnessed Mario Johnson have a short-term transaction with an individual who approached the Cadillac, which was consistent with a street level drug transaction. Surveillance shows that Mario Johnson returned to his address of 1915 Jay Eye See after the suspected drug transaction. The Cadillac Escalade in question has Wisconsin registration AJD6875 and is registered to Carron McCray at 1915 Jay Eye See Ave.

41.     On 05/07/2021 CHS #13 was utilized to purchase 1.4 grams of crack cocaine from MARQUAN WASHINGTON.  CHS #13 contacted MARQUAN WASHINGTON at 310-270-5538 and requested to purchase $100 worth of crack cocaine and was directed to meet MARQUAN WASHINGTON at the Taylor Mart convenience Store in the City of Racine, WI.  Utilizing previously installed video surveillance Detective Seeger watched MARQUAN WASHINGTON exit 1848 Kearney Ave, enter into a Dodge Charger with WI Registration AKL-7619. MARQUAN WASHINGTON then drove to the Taylor Mart Store a few blocks away and meet with CHS #13 in the Dodge Charger where CHS #13 purchased 1.4 grams of crack cocaine from WASHINGTON.

42.     CHS #13's information is credible and reliable because CHS #13 is providing information based on CHS #13's personal knowledge and observations and said information has been corroborated by other sources during this investigation. CHS #13 is cooperating with law enforcement for monetary consideration and has been compensated $200 to date reference this investigation. CHS #13 has no felony convictions or misdemeanor convictions.

43.     On 5/10/2021 Affiant, TFO Rybarik, and Detective Seeger conducted a debrief of SOI #15.  SOI #15 stated that SARAH BECKIUS is dating GERARDO LARA and that GERARDO LARA has used SARAH BECKIUS to traffic kilograms of cocaine from the Chicago Area to Racine, WI.  SOI #15 was shown a picture of 8 kilograms of cocaine from SARAH BECKIUS who stated that SARAH BECKIUS picked up the cocaine in Chicago.  SOI #15 was also shown a horse farm on 7 mile Road in Racine County where GERARDO LARA lives with his twin brother JESUS LARA.  SOI #15 states that JESUS LARA is an enforcer and directly involved in the drug trafficking organization.

44.     SOI #15's information is credible and reliable because SOI #15 is providing information based on SOI #15's personal knowledge and observations and said information has

been corroborated by other sources during this investigation and supported by surveillance and call detail records. SOI #15 is cooperating with law enforcement for monetary consideration and has been compensated $100 to date reference this investigation. SOI #15 has no felony convictions and has misdemeanor convictions for Retail Theft x3, Criminal Trespass to Dwelling, and Disorderly Conduct.

45.     On 05/12/2021 CHS #7 was utilized to purchase 1 ounce of crack cocaine from Michael Hardin for $1380. CHS #7 contacted Michael Hardin at 262-676-4482 and was directed Michael Hardin's residence at 1310/1312 Russet Ave. CHS #7 picked up Michael Hardin and brought Michael Hardin to 2200 Washington Ave where Michael Hardin went inside the building for several minutes and then came back out. Michael Hardin then provided CHS #7 with the 28.8 grams of crack cocaine which CHS #7 believed came from inside of 2200 Washington Ave. During the controlled purchase Michael Hardin relays that one of his girlfriend's lives in the building.

46.     On 5/13/2021 Affiant and TFO Rybarik conducted a debrief of SOI #9. SOI #9 has participated in and has firsthand knowledge of the drug trafficking operation of "T-Nice (Terry Brumby), "MUNCH" (MARQUAN WASHINGTON), "Roe Gotti" (Mario Johnson), "BRITTLE" (BRIAN PHILLIPS), and SARAH BECKIUS. SOI #9 has intimate knowledge that SARAH BECKIUS partnered with MARQUAN WASHINGTON and BRIAN PHILLIPS in distributing and trafficking kilogram quantities of cocaine in Racine, WI. SOI #9 knows that SARAH BECKIUS has been purchasing a kilogram of cocaine from MARQUAN WASHINGTON and BRIAN PHILLIPS every two weeks since January 2020. SOI #9 has direct knowledge that MARQUAN WASHINGTON and BRIAN PHILLIPS are working together to obtain and distribute kilograms of cocaine with SARAH BECKIUS and personally observed SARAH BECKIUS purchase kilograms of cocaine from both MARQUAN WASHINGTON and BRIAN

PHILLIPS. SOI #9 has witnessed SARAH BECKIUS purchase kilograms of powder cocaine from BRIAN PHILLIIPS at his residence of 2213 Lawn St; however, believes that BRIAN PHILLIPS stores his cocaine at rental houses which are being remodeled. SOI #9 knows that MARQUAN WASHINGTON stores his cocaine at Carl Grayson's apartment at 1848 Kearney Ave in Racine, WI. SOI #9 has witnessed MARQUAN WASHINGTON, BRIAN PHILLIPS, and SARAH BECKIUS pooling their money to purchase kilograms of cocaine and SOI #9 was present when SARAH BECKIUS, MARQUAN WASHINGTON, and BRIAN PHILLIPS traveled out of state to Oklahoma and Missouri to pick up kilograms of cocaine. SOI #9 also had firsthand knowledge SARAH BECKIUS was burglarized and $200,000 was taken along with 2 kilograms of cocaine and believes that MARQUAN WASHINGTON was responsible for the Burglary. SOI #9 provided the current phone number for SARAH BECKIUS to be 262-321-8564 which Affiant was able to verify with call detail records.

47.     Affiant reviewed Racine County Police records and located a Burglary in Progress complaint that occurred at 3631 Carter St on 03/09/2021 at 10:29AM. This complaint outlines that a burglary occurred at the residence of SARAH BECKIUS and GERARDO LARA however no victim came forward after a neighbor witnessed two males breaking into the house and stealing items.

48.     SOI #9's information is credible and reliable because SOI #9 has given information concerning other individuals involved in illegal activities that have been corroborated by this investigation and other sources of information. SOI #9 is cooperating in exchange for consideration on felony charges and has received no monetary consideration. SOI #9 has no adult felony convictions and has one misdemeanor conviction for Possessing Illegally Obtained Prescription.

49. Affiant was aware that SARAH BECKIUS was arrested on 05/07/2021 and possessed 12.2 grams of cocaine. SARAH BECKIUS was subsequently charged in Racine County Case 2021CF000785 with Possession with Intent to Deliver Narcotics as well as several other felony and misdemeanor offenses. Affiant reviewed and listened to jail/prison phone calls from SARAH BECKIUS and determined her to be in a dating relationship with GERARDO LARA and that GERARDO LARA is utilizing cellular phone number 262-598-7249. Affiant listened to prison phone calls from Michael Wright to 262-598-7249 and further corroborated that GERARDO LARA was the victim of a burglary perpetrated by MARQUAN WASHINGTON for $160,000. Affiant also reviewed phone call detail records for MARQUAN WASHINGTON and BRIAN PHILLIPS and found 262-598-7249 to be a common number called by both MARQUAN WASHINGTON and BRIAN PHILLIPS. Additionally, Affiant listened to a recorded phone call between SOI #4 and BRIAN PHILLIPS at 262-664-3328 discussing the burglary of "Migo" where SOI #4 tells BRIAN PHILLIPS to call "Migo" and tell him that SOI #4 knows who stole "Migo's" money. BRIAN PHILLIPS says he will call "Migo" and call detail records show that BRIAN PHILLIPS immediately called 262-598-7249. This phone call occurred on 03/30/2021 at 5:56PM. Affiant determined that based on the recorded phone calls, burglary in progress complaint, and debriefs conducted that GERARDO LARA is "Migo", and is suppling MARQUAN WASHINGTON and BRIAN PHILLIPS with kilograms of cocaine.

50. On 05/18/2021 CHS #10 was utilized to attempt to purchase crack cocaine from Carl Grayson. CHS #10 contacted Carl Grayson at 262-417-3060 and Carl Grayson stated that he had to go pick up and that he was "getting his money together". CHS #10 reports that this meant that Carl Grayson is out of crack cocaine and was going to go pick up more. Surveillance units then watched Carl Grayson leave 1848 Kearney Ave and GRAYSON was followed to 3205 Indiana St, Racine, WI (apartment building) where Carl Grayson went inside for approximately

ten minutes. Carl Grayson then left the building and travelled back to his residence at 1848 Kearney Ave. Affiant later reviewed call detail records and found that Carl Grayson contacted Terry Brumby just as he was leaving his residence and again as Carl Grayson arrived at 3205 Indiana St.

51.     On 05/21/2021 CHS #7 was utilized to purchase 24.6 grams of crack cocaine from Michael Hardin. CHS #7 had previously contacted Michael Hardin at 262-676-4482 to arrange the purchase. CHS #7 again picked up Michael Hardin at 1310/1312 Russet and drove him to the Pleasant Point Senior Living at 8500 Corporate Drive, Mt Pleasant, WI. Michael Hardin exited CHS #7's vehicle and entered into a gold Chevy Malibu with WI Registration AFE-1716 which lists to Raven Luten at 2200 Washington Ave Apt 212. CHS #7 followed Michael Hardin back to 2200 Washington Ave where Michael Hardin again briefly went inside and came out with the crack cocaine. During this buy CHS #7 was told by Michael Hardin that Mario Johnson does not really sell much marijuana anymore and that Mario Johnson only gets the marijuana if Michael Hardin wants to sell it.

52.     On 05/21/2021 TFO Langendorf, TFO Rybarik, and Detective Seeger conducted a debrief of SOI #10. SOI #10 met BRIAN PHILLIPS in January 2020 and identified BRIAN PHILLIPS as one of the largest and best quality crack cocaine dealers on the north side of Racine, WI. SOI #10 would purchase various amounts of crack cocaine from BRIAN PHILLIPS almost daily from .2 grams up to 3.5 grams and that BRIAN PHILLIPS would consistently be operating a silver KIA SUV when delivering the crack cocaine. SOI #10 stated that half of the time BRIAN PHILLIPS would send a runner, Jasmine Gonzales, to deliver the controlled substances. SOI #10 provided BRIAN PHILLIPS phone number as 262-221-6999.

53.     On 05/27/2021 CHS #10 was utilized to purchase .5 grams of crack cocaine and 7 grams of marijuana from Carl Grayson. CHS #10 contacted Carl Grayson at 262-417-3060 and

asked if CHS #10 could come by the house and Carl Grayson directed CHS # 10 to the rear door due to construction on the building. CHS #10 purchased $50 worth of crack cocaine and $60 worth of marijuana from Carl Grayson. While CHS #10 was inside of 1848 Kearney Ave with Carl Grayson, MARQUAN WASHINGTON came over to the residence and delivered crack cocaine to Carl Grayson.

54.    On 05/27/2021 Detective Seeger conducted undercover surveillance at 3205 Indiana St and observed Terry Brumby and Tirawann Barker at the residence in different rental vehicles listing to Avis Rental Car. Tirawann Barker was operating a Blue Ford Explorer and Terry Brumby was operating a gray Chevrolet Tahoe. Renter information was obtained from AVIS and showed both vehicles to be rented by Terry Brumby.

55.    On 05/28/2021 Affiant and TFO Langendorf conducted a debrief of SOI #11. SOI #11 identified BRIAN PHILLIPS as a large level drug dealer that sells crack cocaine and heroin in the City of Racine, WI. SOI #11 knows that Jasmine Gonzales is working for BRIAN PHILLIPS to deliver controlled substances and had personally obtained controlled substances from both BRIAN PHILLIPS and Jasmine Gonzales who have shown up together and, other times, separately to deliver the controlled substances. SOI #11 also has personally observed April Howe obtaining cocaine from Mario Johnson.

56.    SOI #11's information is credible and reliable because the information provided regarding other person involved in the sale of illegal controlled substance has been corroborated by other reliable sources. SOI #11 is cooperating with law enforcement in exchange for consideration on felony charges. SOI #11 has no adult felony convictions and misdemeanor convictions for Operating a Vehicle While Intoxicated, Receiving Stolen Property, Bail Jumping, Theft-Movable Property, Possession of THC, and other traffic related offenses.

57.     On 06/04/2021 CHS #7 was utilized to purchase 29.1 grams of crack cocaine from Mario Johnson.  CHS #7 called Mario Johnson at 262-456-8568 and requested to purchase crack cocaine from Mario Johnson.  CHS #7 told Mario Johnson that Michael Hardin was out of town. Michael Hardin told CHS #10 to contact Mario Johnson to obtain crack cocaine.  CHS #7 had to call Michael Hardin who in return had to call Mario Johnson for CHS #7 to set up the purchase. Eventually, after Michael Hardin had set up the deal, CHS #7 was able to contact Mario Johnson at the same above number and was directed to the area of Byrd Ave and Perry Ave where the transaction was completed.

58.     On 06/07/2021 CHS #7 was utilized to purchase 28 grams of crack cocaine from Mario Johnson through Ashely Westmoreland.  CHS #7 contacted Mario Johnson at 262-456-8568 and requested a price of an ounce of crack cocaine.  Mario Johnson stated $1450 and directed CHS #7 to Carl Grayson's residence at 1848 Kearney Ave.  While waiting for Mario Johnson to arrive, CHS #7 called Mario Johnson at the above number and asked how long it would be until Mario Johnson arrived. Mario Johnson replied, "Shortie just pulled up".  Moments later Ashley Westmoreland arrived in a silver Kia Rental vehicle and sold CHS #7 the crack cocaine on behalf of Mario Johnson.  CHS #7 advised that Ashley Westmoreland is one of Mario Johnson's girlfriends and Detective Seeger had previously observed Mario Johnson at Ashley Westmoreland's address of 1829 Franklin St, Racine, WI.

59.     On 06/09/2021 Detective Seeger conducted a debrief of SOI #14.  SOI #14 is not privy to the drug organization and is a citizen eyewitness. SOI #14 specifically stated that a Silver KIA SUV with Wisconsin Registration AHL-6747 has been distributing controlled substances on Orange St, in the City of Racine, WI.  SOI #14 personally witness the KIA SUV come from Lawn St and meet with a Black Dodge Durango with no plates, a Black Jeep Cherokee, and a brown Ford F150 with personalized veteran plates to conduct drug transactions.  Detective Seeger knows

that BRIAN PHILLIPS lives at 2213 Lawn St with Jeri Balderas. The above-mentioned KIA SUV lists to Jeri Balderas at the above address.

60.     SOI #14's information is reliable and credible because SOI #14 is a citizen eyewitness and information provided is based upon SOI #14's personal knowledge and observations. SOI #14 provided information to law enforcement for the betterment of the community and has received no compensation. SOI #14 has no adult felony or misdemeanor convictions.

61.     On 06/292021 Affiant queried the official Number Portability Administration Center database to determine the current service providers and found 262-598-7249 and 262-321-8564 are active on the Verizon Wireless network and 262-664-3328 and 262-497-2716 are active on the AT&T Wireless network. Affiant has also received call detail records for the above numbers through the listed service providers over the past two to three months also.

62.     Affiant believes cellular telephones assigned call numbers 262-664-3328 and 262-497-2716 (the "Target Cell Phones"), whose service provider is AT&T Wireless ("Service Provider"), a wireless telephone service provider, contains valuable information on this account that could be used as evidence for the possible crimes of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances and maintaining a drug-involved premises, violations of Title 21, United States Code, Sections 841, 846 and 856.

## TECHNICAL BACKGROUND

63.     Based on Affiant's training and experience, Affiant knows that Service Provider can collect historical and prospective cell-site data and historical and prospective E-911 Phase II data about the location of the Target Cell Phones, including by initiating a signal to determine

the location of the Target Cell Phones on Service Provider's network or with such other reference points as may be reasonably available.

## Cell-Site Data

64.     In Affiant's training and experience, Affiant has learned that Service Provider is a company that provides cellular communications service to the general public. Affiant also knows that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

65.     Based on Affiant's training and experience, Affiant knows that Service Provider can collect cell-site data on a historical and prospective basis about the Target Cell Phones. Based on Affiant's training and experience, Affiant knows that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. Affiant also knows that wireless providers such as the Service Provider typically

collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business to use this information for various business-related purposes.

### E-911 Phase II / GPS Location Data

66. Affiant knows that some providers of cellular telephone service, including Service Provider, have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

67. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

68. Affiant also knows that certain wireless providers, such as Service Provider, can provide precision location information, also known as estimated location records or historical handset location data, on both a historical and prospective basis. Each provider refers to its proprietary estimates of a cellular device's location differently. This information, however, is sometimes referred to as geolocation information (PING), Network Event Location System (NELOS) data, Global Positioning System (GPS) data, cell tower triangulation or trilateration, round-trip time or real-time tool (RTT), per-call measurement data (PCMD), historical E911 data, or precision measurement information.

69.     Based on Affiant's training and experience, Affiant knows that Service Provider also can collect per-call measurement data, which Service Provider also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

70.     Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on Affiant's training and experience, Affiant knows that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phones, including by initiating a signal to determine the location of the Target Cell Phones on the Service Provider's network or with such other reference points as may be reasonably available.

### Pen-Trap Data

71.     Based on Affiant's training and experience, Affiant knows each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

### Subscriber Information

72.     Based on Affiant's training and experience, Affiant knows that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. Affiant also knows that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business.

73.     In Affiant's training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify Target Cell Phones' user or users, the locations of that user or users, and the patterns of that user or users. A frequency analysis of the telephone communications between MARQUAN WASHINGTON, BRIAN PHILLIPS, SARAH BECKIUS, GERARDO LARA, and others is material, in that it can establish whether the calls described above are a deviation from their normal patterns of communication. The frequency analysis of the locations associated with the cellular devices can establish whether the locations are deviations or consistent with normal patterns. This information is relevant to show whether MARQUAN WASHINGTON, BRIAN PHILLIPS, SARAH BECKIUS, GERARDO LARA and others acted-in-concert, by establishing the nature and extent of their relationship, the existence and scope of the conspiracy, the pattern of their communications, their patterns of travel, and any deviations from those patterns.

## AUTHORIZATION REQUEST

74.     Based on the foregoing, Affiant requests that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

75.     Affiant further requests that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

76.     Affiant also requests that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the locations of the Target Cell Phones on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

77.     Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. Affiant further requests that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phones outside of daytime hours.

**ATTACHMENT A**

**MATTER NO. 2021R00144**

**Property to Be Searched**

1. Records and information associated with the cellular devices assigned call numbers 262-664-3328 and 262-497-2716 (referred to herein and in Attachment B as "the Target Cell Phones"), with listed subscriber(s) unknown, that is in the custody or control of AT&T Wireless (referred to herein and in Attachment B as "Service Provider") a wireless telephone service provider headquartered at 11760 U.S. Highway 1, Suite 300, North Palm Beach, Florida 33408.

2. The Target Cell Phones.

**ATTACHMENT B**

**MATTER NO. 2021R00144**

**Particular Things to be Seized**

**I.     Information to be Disclosed by the Service Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a. The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phones for the time period from January 1, 2021 to present:

        i. Names (including subscriber names, usernames, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long-distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number

("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

    vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

   viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records; and

    ix.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phones, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

b.  Information associated with each communication to and from the Target Cell Phones for a period of 60 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

   ii. Source and destination telephone numbers;

  iii. Date, time, and duration of communication; and

   iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phones will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phones.

c. Information about the location of the Target Cell Phones for a period of 60 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

    i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the

location of the Target Cell Phones on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of possible crimes of distribution and possession with intent to distribute controlled substances, conspiracy to distribute and possess with the intent to distribute controlled substances and maintaining a drug-involved premises, violations of Title 21, United States Code, Sections 841, 846 and 856, involving MARQUAN WASHINGTON, BRIAN PHILLIPS, SARAH BECKIUS, GERARDO LARA and additional known and unknown persons during the period of January 1, 2021 to present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.